UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS KESKA JR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

17-CV-1010
DECISION & ORDER

On October 6, 2017, the plaintiff, Thomas Keska Jr., brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On July 25, 2018, Keska moved for judgment on the pleadings, Docket Item 11; on September 21, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on October 15, 2018, Keska replied, Docket Item 16.

For the reasons stated below, this Court grants Keska's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On February 6, 2014, Keska applied for Supplemental Security Income benefits ("SSI"). Docket Item 7 at 14. He claimed that he had been disabled since January 1,

2014, due to herniated discs; inability to stand, sit, or bend; inability to lift more than 5 pounds; sciatica; anxiety; heart disease; and sleep apnea. *Id.* at 65.

On April 14, 2014, Keska received notice that his application was denied because he was not disabled under the Act. *Id.* at 85. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 100, which was held on May 9, 2016, *id.* at 14. The ALJ then issued a decision on May 25, 2016, confirming the finding that Keska was not disabled. *Id.* Keska appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5. On October 6, 2017, Keska filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Keska's objection. Keska was examined by several different providers but five—Paula Callahan, L.C.S.W.; Tulio Ortega, M.D.; Gregory Fabiano, Ph.D.; H. Tzetzo[1]; and Edgar Bassig, M.D.—are of most significance to the claim of disability here.

### A. Paula Callahan, L.C.S.W.

Paula Callahan, L.C.S.W., is a social worker who provided therapy for Keska at Orleans County Clinic on several occasions between 2014 and 2016. Docket Item 7 at 248, 263, 482, 495. After she first saw Keska, Ms. Callahan diagnosed generalized anxiety disorder, moderate major depressive disorder, and obsessive-compulsive personality features. *Id.* at 259. Two years later, Ms. Callahan completed a mental residual functional capacity evaluation of Keska. *Id.* at 516-20. In that evaluation, Ms.

---

[1] Neither Tzetzo's full name nor his or her credentials are clear from the record.

Callahan noted that Keska struggled with standards of attendance, routine, working with others, and performing at a consistent pace. *Id.* She also noted that Keska gets overstimulated by people, noise, or deadlines and that he would miss four days of work per month. *Id.*

B. **Tulio Ortega, M.D.**

Tulio Ortega, M.D., a psychiatrist, evaluated Keska at the Orleans County Clinic and saw him for medication management on several occasions. *Id.* at 260, 266, 269, 480, 487, 493. Dr. Ortega has maintained Keska on Prozac and Xanax to treat his anxiety and obsessive-compulsive disorder. *Id.* Dr. Ortega opined that Keska seemed to be improving with treatment, "seem[ed] to be maintaining stability," and is "happy and content with the way he is feeling." *Id.* at 491.

C. **Gregory Fabiano, Ph.D.**

Gregory Fabiano, Ph.D., saw Keska for a consultative psychological examination on March 31, 2014. *Id.* at 375. Dr. Fabiano found Keska's mental status to be entirely normal. *Id.* Keska demonstrated a cooperative attitude, adequate social skills, normal speech, coherent and goal-directed thought processes, no evidence of hallucinations or paranoia, euthymic mood, intact attention and concentration, intact recent and remote memory, and good insight and judgment. *Id.* at 377.

D. **H. Tzetzo**

H. Tzetzo saw Keska for a psychological assessment on April 3, 2014. *Id.* at 373. Tzetzo is a medical consultant at the New York State Office of Temporary and

3

Disability Assistance, Division of Disability Determinations. *Id.* Tzetzo determined that Keska's impairments are "non severe." *Id.*

### E. Edgar Bassig, M.D.

Edward Bassig, M.D., is Keska's primary care physician. *Id.* at 19. Dr. Bassig saw Keska on several occasions and for a variety of ailments. *Id.* at 304, 311. Dr. Bassig found that Keska had limited cervical and lumbar motion and cervical spasm, but no lumbar spasm and normal motor strength, intact sensation, and normal deep tendon reflexes. *Id.* at 274, 278, 287, 288, 290. In March 2014, Dr. Bassig completed a medical source statement in which he opined that Keska was limited to standing and walking for less than 2 hours a day; to sitting less than 6 hours a day; and in his ability to lift, carry, push, and pull heavy objects. *Id.* at 383.

## III. THE ALJ'S DECISION

In denying Keska's application, the ALJ evaluated Keska's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the

claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ determined at step one that Keska was not engaged in substantial gainful employment. Docket Item 7 at 16. At step two, the ALJ determined that Keska had the severe impairments of degenerative disc disease of the lumbar and cervical spine, ischemic heart disease and coronary artery disease, chronic obstructive

5

pulmonary disease, obstructive sleep apnea, obsessive compulsive disorder, depression, and anxiety disorder. *Id.* The ALJ further found at step three that none of these severe impairments themselves or in combination met or medically equaled the severity of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

Then, at step four, the ALJ determined that Keska had the RFC to lift or carry 20 pounds occasionally and 10 pounds frequently, to stand or walk 6 hours in a typical 8-hour workday, and to sit 6 hours in a typical 8-hour work day. *Id.* at 18. The ALJ found Keska could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; and had to avoid exposure to hazards, machinery, heights, extreme temperatures, wetness, vibration, fumes, odors, dust, gases, and poor ventilation. *Id.* The ALJ limited Keska's RFC to simple, repetitive, routine tasks with no production rate of pace or quota and only occasional interaction with coworkers, supervisors, and the public. *Id.* The ALJ then found that Keska could not perform any past relevant work but could perform jobs that exist in the national economy, such as collator operator or power screwdriver operator. *Id.* at 22, 23.

## **LEGAL STANDARDS**

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial

6

evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. KESKA'S CLAIMS

Keska objects to the ALJ's decision for three reasons, each of which Keska argues requires remand. First, Keska argues that the ALJ erred in rejecting Ms. Callahan's opinion about Keska's mental RFC. Docket Item 11-1 at 11-13. Second, Keska argues that by assigning little weight to Ms. Callahan's opinion—while also rejecting the opinions of other sources regarding Keska's mental limitations —the ALJ created a gap in the record that the ALJ was obligated to fill. *Id.* at 13. Finally, Keska argues that the ALJ was obligated to recontact Dr. Bassig, a treating source physician, to seek clarification before rejecting his opinion. *Id.* at 16.

### II. ANALYSIS

#### A. Weight Assigned to Treating Source Opinions

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language

pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

The ALJ may consider the opinions of "other sources"—e.g., social workers—but the ALJ is not obliged to assign weight or give deference to such sources. *Id.* Even so, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source. *See* 20 C.F.R. § 404.1527(c)(4). Other factors include the length and nature of the relationship between the opinion source and the claimant, whether evidence supports the opinion, whether the source of the opinion has a relevant specialization, and other factors the claimant brings to the Commissioner's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

Here, Keska argues that the ALJ erred by assigning little weight to Ms. Callahan's opinion despite their treatment relationship. Docket Item 11-1 at 13. But the ALJ addressed the factors outlined in 20 C.F.R. § 404.1527(c) in deciding to discount Ms. Callahan's opinion.[2] He considered the length and nature of this treatment relationship, noting that the findings of Ms. Callahan's several mental status examinations were "consistently normal" and noting improvement over time. Docket

---

[2] The only factor that the ALJ does not explicitly mention is whether Ms. Callahan has any specialty. Docket Item 7 19-21.

8

Item 7 at 21. The ALJ referred to Ms. Callahan as "[t]he claimant's therapist." *Id.* In addition, the ALJ found that relevant evidence did not support Ms. Callahan's opinion because the consistently normal findings of Ms. Callahan's mental status examinations were necessarily inconsistent with her opinion that Keska was "unable to meet competitive standards" in most mental functional areas. *Id.* And the ALJ noted that other objective evidence—in particular, Dr. Ortega's findings that Keska experienced consistent improvement with treatment—was consistent with Ms. Callahan's treatment record but inconsistent with her opinion. *Id.*

In assigning little weight to Ms. Callahan's opinion, the ALJ noted that her examination findings did not support her conclusion, evaluated the consistency of her findings in light of other evidence in the record, and acknowledged her treatment relationship with Keska. That is exactly what 20 C.F.R. § 404.1527(c) prescribes. The ALJ therefore appropriately decided the weight to be given to Ms. Callahan's "other source" opinion, and substantial evidence supports the ALJ's decision in this regard.

## B. Gaps in the Record

In evaluating a claim of disability, the Commissioner "will consider all *evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant evidence includes objective medical evidence, such as laboratory results or observable abnormalities; medical opinions; other medical evidence; nonmedical evidence; and prior administrative findings. 20 C.F.R. § 404.1513. The ALJ fulfills his or her "'responsibility' of 'assessing [a claimant's] residual functional capacity' by reviewing 'all the relevant evidence' which includes 'objective medical evidence.'" *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (quoting

9

relevant regulations). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013).

Keska argues that the ALJ reached a mental RFC determination unsupported by substantial evidence because he assigned little weight to the medical opinions of Ms. Callahan, Dr. Fabiano, and H. Tzetzo, which Keska claims constitute all the medical opinions pertaining to his mental impairments. Keska's argument is unpersuasive for two reasons.

First, the treatment notes from Ms. Callahan and Dr. Ortega both provided objective medical evidence in support of the ALJ's decision. In fact, those very treatment notes led the ALJ to assign little weight to the opinions that were inconsistent with them. *See Monroe v. Comm'r of Soc. Sec.,* 676 Fed. Appx. 5 (2d Cir. 2017) ("[T]he ALJ's decision not to give controlling weight to [treating physician] was proper considering the substantial evidence contradicting [the physician's] assessment. . . . [H]is treatment notes contradicted his RFC assessment.").

Second, Keska's case is not one in which the record includes no medical opinions at all. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.") (internal citation omitted). Here, the ALJ discussed each of the medical opinions pertaining to Keska's mental impairments. Docket Item 7 at 21 (discussing opinions from Dr. Fabiano, Ms. Callahan, and H. Tzetzo). And even though the ALJ did

not expressly assign a particular weight to it, Dr. Ortega's opinion supports the ALJ's RFC assessment. Dr. Ortega opined that Keska's "[c]ognitive functioning seemed to be grossly intact" and he had "no problems with attention or concentration." *Id.* at 480. And the ALJ specifically referred to Dr. Ortega's note that Keska "was medically stable and seemed to be improved." *Id.* at 20. So medical opinions pertaining to Keska's mental impairments were "incorporated into the ALJ's RFC assessment" even though the ALJ found that substantial evidence did not warrant assigning any particular opinion great weight. *Dougherty-Noteboom*, 2018 WL 3866671, at *9.

In sum, by discounting medical opinions because they were inconsistent with underlying objective medical evidence, the ALJ did not create a gap in the record. He simply weighed the available evidence—as he should have. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

### C. Recontacting a Treating Source

When an ALJ finds that a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). Conversely, when an ALJ does not give a treating source opinion controlling weight, he or she must consider the length, nature, and extent of the treatment relationship, as well as support for the opinion and its consistency with the rest of the record. *Id.* Here, Keska argues that because the ALJ found Dr. Bassig's opinion about functional capacity to be inconsistent with his other

records, the ALJ was required to "seek clarification . . . before rejecting the doctor's opinion." *Urena-Perez v. Astrue*, 2009 WL 1726217, at *29 (S.D.N.Y. 2009).

Keska cites several cases in this district where the court remanded the case because of the ALJ's duty to develop the record when the record was incomplete. *See Tumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because the ALJ found that it was incomplete [and] the ALJ had a duty to develop the record by re-contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion.") (citations omitted); *Mecklenburg v. Astrue*, 2009 WL 4042939, at *6 (W.D.N.Y. 2009) (when doctor "opined that the plaintiff was totally disabled [but] the ALJ stated that [the treating physician] did not identify specific and objective clinical findings that supported his finding of disability," the ALJ had a duty to develop the record) (quotations of the administrative record omitted). On the other hand, "the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification." *Jasen v. Comm'r of Soc. Sec.*, 2017 WL 3722454, at *12 (W.D.N.Y. Aug. 29, 2017) (quoting *Ayers v. Astrue*, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009)).

Here, the medical record is incomplete in a way that triggered the ALJ's duty to develop the record. The ALJ gave little weight to Dr. Bassig's opinion that Keska could not stand and walk for more than two hours in a work day because the ALJ believed that opinion to be inconsistent with Dr. Bassig's findings and with the clinical findings of two other care providers. Docket Item 7 at 21. But Dr. Bassig's examination findings do not include any objective evidence regarding Keska's ability to stand and walk—or

anything else that is necessarily inconsistent with Dr. Bassig's opinion about how long Keska could stand and walk. *Id.* at 304-321. If Dr. Bassig's examination findings are, in fact, inconsistent with his medical opinion, that determination must come from a medical source interpreting how those findings relate to Keska's ability to stand and walk. *See McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sep. 7, 2010) ("[A]n ALJ is not free to substitute his own lay opinion for opinions from treating sources."). In other words, there is nothing inherent in the examination findings of Dr. Bassig—or any other provider, for that matter—that necessarily leads to the conclusion that Keska could stand or walk more than two hours in a work day. So if the ALJ suspected an inconsistency between Dr. Bassig's opinion and examination findings, the ALJ was required at the very least to contact Dr. Bassig in this regard. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'").

Along the same lines, there is nothing in the record to support the RFC assessment that the ALJ ultimately reached: that Keska could stand and walk for *six* hours in a work day. *Id.* at 18; 304-321; 368-371; 463-469. For that reason, there is a clear gap in the record between the medical evidence and the ALJ's conclusion, and in reaching that conclusion the ALJ substituted "his own judgment for competent medical opinion." *McBrayer*, 712 F.2d at 799. A specific finding that a plaintiff can stand and walk for a certain number of hours each day must have some medical support beyond

13

the ALJ's lay estimate.  Again, the ALJ was required to ask medical providers to weigh in on that issue before reaching such a precise medical conclusion.

Because of the gap in the record, and because the ALJ substituted his lay judgment that Keska could stand and walk six hours each day for the treating physician's limit of two hours, the case is remanded so that the ALJ can develop the record.  See *McBrayer*, 712 F.2d at 799.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Keska's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part.  The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:	February 5, 2019
	Buffalo, New York

   *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE